## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| DANIEL A. ROBERTS, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No.  SA-14-CA-0080-XR |
| | § | |
| BEXAR COUNTY SHERIFF'S OFFICE | § | |
| DETECTIVE JESUS OCHOA, ET. AL., | § | |
| | § | |
| *Defendants.* | § | |

## ORDER

Plaintiff commenced this action *pro se* against numerous defendants who were allegedly involved in Plaintiff's false arrest on an aggravated kidnapping charge for which he was imprisoned for thirty-seven days.  He also alleges that he was wrongfully denied compensation from a state crime victims' fund.  The Magistrate Judge recommends denying Plaintiff's motion for leave to proceed *in forma pauperis*.  The Magistrate Judge also recommends dismissing certain time-barred and frivolous claims with prejudice and dismissing all other claims without prejudice.  The Magistrate Judge recommends denying or dismissing as moot any other motions or requests for relief.  The Court accepts the recommendations of the Magistrate Judge.

### A. Procedural Background

On June 26, 2013, Plaintiff filed his original complaint and a motion for leave to proceed *in forma pauperis* in the United States District Court for the District of Connecticut. Doc. No. 1, 2.  That court granted Plaintiff's motion to proceed *in forma pauperis*, but also

1

directed him to file an amended complaint as there were jurisdiction and venue issues with his first complaint.  Plaintiff did not cure all of the noted deficiencies, but provided additional information and objections to the ruling.  Doc. Nos. 9, 10.  The Magistrate Judge of that court then recommended that Plaintiff's case be dismissed for lack of proper venue and personal jurisdiction.  Doc. No. 10.  The District Judge subsequently transferred the case to this Court instead of dismissing the claims.  Doc. No. 14.

After the transfer, Plaintiff filed a motion for service of process on February 13, 2014.  Doc. No. 15.  Magistrate Judge Mathy entered a show cause order on February 25, 2014, identifying numerous deficiencies in Plaintiff's proposed complaint and ordering Plaintiff to amend his complaint.  Doc. No. 17.  Plaintiff filed a first amended complaint and a motion to proceed *in forma pauperis* on April 21, 2014.  Doc. Nos. 23, 24.  The first amended complaint identifies six named defendants and 164 un-named defendants.  Plaintiff filed a motion on May 5, 2014 to disregard the former plea for service of process and filed a motion not to forewarn Defendants of the pending lawsuit.  Doc. Nos. 25, 26.  The Magistrate Judge issued her Memorandum and Recommendations on May 7, 2014.  Doc. No. 27.  Plaintiff has requested leave to file a second amended complaint.  Doc. No. 31.  He has raised no specific objections to the Memorandum and Recommendations, but the Court will nevertheless conduct a *de novo* review.

**B. Factual Background**

Plaintiff's amended complaint alleges that he was assaulted by a hitchhiker in January 2011.  Doc. No. 23 at 4-5 ¶¶ 9-12.  Plaintiff alleges that when officers from the Bexar County Sheriff's Office ("BCSO") arrived at the scene, they failed to adequately catalog evidence and

failed to arrest Plaintiff's attacker.  *Id.* at 6 ¶ 17-27.  Plaintiff further claims that the description of the attack in the officers' report was incorrect.  *Id.* at 5 ¶ 14.  The report states that Plaintiff's assailant claimed that Plaintiff groped him.  *Id.* at 5 ¶ 18.  Plaintiff, however, does not specify which officers drew up the report or responded to his 9-1-1 call.  Plaintiff states that he suffered a traumatic brain injury as a result of the attack.  *Id.* at 5 ¶ 11.

After several attempts at contacting the BCSO regarding his attack, Plaintiff was contacted by Detective Jesus Ochoa.  *Id.* at 7 ¶ 38.  Detective Ochoa allegedly told Plaintiff that his assailant was released and no evidence was gathered.  *Id.* at 8 ¶ 47.  On January 24, Plaintiff left a message with the FBI about alleged corruption in the BCSO.  *Id.* ¶ 52.  On February 2, 2011 Plaintiff was interrogated by Det. Ochoa.  *Id.* at 9 ¶ 57.  Plaintiff alleges that Det. Ochoa accused him of "grabbing the assailant" and refused Plaintiff's request for CSI to inspect Plaintiff's car.  *Id.* ¶¶ 59-64.  Plaintiff also alleges that Det. Ochoa called the Texas Crime Victims' Compensation Fund and told them that Plaintiff was "in on it" in regard to the attack.  *Id.* ¶ 67.  Plaintiff claims that, as a result, the Fund did not pay his hospital bill or living expenses.  *Id.*  Plaintiff alleges that in discussing the matter with Det. Ochoa, the Crime Victims' Fund violated its own policies.  *Id.*  ¶ 68.  On February 15, 2011, Plaintiff's initial application to the Crime Victims' Fund was denied.  *Id.* at 10 ¶ 72.

When Plaintiff continued to investigate what he suspected was corruption at the BCSO, he allegedly had conversations with Det. Ochoa wherein Det. Ochoa claimed that Plaintiff had fabricated evidence of the previous assault and that Det. Ochoa had access to Plaintiff's emails.  *Id.* at 9 ¶ 64.  Plaintiff alleges that Det. Ochoa continued to impede his efforts to investigate the police officers' conduct.  *Id.* at 10 ¶ 76-84.  Plaintiff filed a complaint with the

Texas Attorney General, Victims of Crime Division on March 16, 2011.  *Id.* at 11 ¶ 97.
Plaintiff left messages with the FBI and DOJ in March.  *Id.* ¶¶ 88, 98-99.  Plaintiff alleges that
he was told in early May that BCSO Internal Affairs would handle his complaint against Det.
Ochoa. *Id.* at 12 ¶ 111.

Plaintiff alleges that on May 28, 2011, Det. Ochoa secured a warrant without probable
cause for Plaintiff's arrest for the charge of aggravated kidnapping.  *Id.* at 12 ¶ 115.  Plaintiff
alleges that an unknown Bexar County DA helped (or instructed) Det. Ochoa to prepare the
warrant that allegedly lacked probable cause on its face.  *Id.*  ¶ 154.  Plaintiff allegedly also
received threatening phone calls from Det. Ochoa following his complaint to Internal Affairs.
*Id.* ¶ 113.  Plaintiff's complaint further notes that Octavia Thompson, an employee of the
Texas Crime Victims' Fund received his letter putting forth evidence of the BCSO's
corruption.  *Id.* at 12 ¶ 110.  Plaintiff's appeal to the Fund was ultimately denied.  *Id.* at; 14 ¶
124.  Plaintiff alleges that on or about June 21, 2011, he received a call allegedly from the
Victims' Fund asking to meet and provide evidence.  *Id.* at 12 ¶ 117.

Plaintiff claims the following occurred on or after June 26, 2011: Plaintiff alleges that
when he went to meet the Fund representative he was "rushed upon by four plain-clothed
[federal] officers" and arrested pursuant to the aforementioned warrant, but he does not name
the officers involved in his arrest.  *Id.* at 13 ¶ 120.  Plaintiff claims that all agencies involved
in the arrest show a consistent pattern of hiring unqualified personnel and then failing to
supervise or train them, and identifies former Sheriff Amadeo Ortiz as a corrupt official in the
BCSO.  *Id.*  Plaintiff cites to articles in which Ortiz is accused of corruption, but does not
name any other actors involved in the alleged conspiracy, and does not provide any case-

specific facts involving Ortiz.  *See id.*  Plaintiff states that he was placed in a "felony cell" in the Bexar County Jail.  *Id.* at 14 ¶ 123.

Plaintiff claims that his landlady was put in contact with Det. Ochoa following his arrest and incarceration, and that the Detective instructed her to dispose of Plaintiff's belongings because Plaintiff had been "out kidnapping."  *Id.* at 14 ¶¶ 127-28.  Plaintiff states that his landlady kept his belonging, however.  Upon being released from jail on bond on August 5, 2011, *id.* at 15 ¶ 147, Plaintiff claims to have received calls from a withheld number and notes that calls he previously received from Det. Ochoa were from a withheld number.  *Id.* ¶ 151.  Plaintiff discovered that his case had been "rejected pending further investigation" on November 15, 2011, and that an internet link to a video of his arrest now leads to a blank page. *Id.* ¶¶ 155-58.  Plaintiff filed this lawsuit on June 26, 2013.

### C. Plaintiff's Claims

Plaintiff has brought claims against six named defendants in his first amended complaint: Bexar County Sheriff's Office Detective Jesus Ochoa, in his individual and official capacities; Former Bexar County Sheriff Amadeo Ortiz, in his individual and official capacities; Bexar County Jail, in its official capacity; San Antonio Federal Marshal "Arresting Officer #1, 2992 Medina," in his individual capacity; San Antonio Federal Marshal "Arresting Officer #2, 0772 Blockly," in his individual capacity; Employee of the Texas Crime Victims' Compensation Fund, Octavia Thompson, in her individual capacity.  Doc. No. 23 at 17–18.

Plaintiff also lists as defendants "Actors 1-164, inclusive" but does not state sufficient facts to identify the additional potential defendants, other than an unnamed Bexar County DA, nor has he provided any information about which claims he wants to bring against them; he

states that they "are to be sued for damages in their individual capacity and their official capacity." Doc. No. 23 at 18.

Plaintiff has brought five different "State Law" claims and four "Constitutional Law" claims, as laid out in his first amended complaint. Plaintiff's claims are as follows:

***Plaintiff's State Law Claims*:**

1. Abuse of Process against all named defendants

2. Negligence against Detective Jesus Ochoa, Sheriff Amadeo Ortiz, Arresting Officer Medina, Arresting Officer Blockly, and Octavia Thompson

3. Negligent Misrepresentation against Arresting Officer Medina, Arresting Officer Blockly, and Octavia Thompson

4. Defamation against Detective Jesus Ochoa and Sheriff Amadeo Ortiz

5. Intentional Infliction of Emotional Distress against all named defendants

Doc. No. 23 at 17–19.

***Plaintiff's Constitutional Law Claims*:**

1. False Imprisonment under 42 U.S.C. § 1983 against all named defendants

2. 42 U.S.C. § 1983: Illegal Seizure under the Fourth Amendment against all named defendants

3. 42 U.S.C. § 1983, 1985: A Civil Conspiracy to Deprive Plaintiff of His Constitutional Rights against all named defendants

4. 42 U.S.C. § 1983 Refusing or Neglecting to Prevent against all named defendants

Doc. No. 23 at 18–24.

Plaintiff is seeking declaratory and injunctive relief, a declaration of actual innocence, compensatory damages for physical injury and pain and suffering, and an award of exemplary and punitive damages. Doc. No. 23 at 24. Plaintiff is seeking costs as well, including litigation expenses, out-of-pocket expenses, and reasonable attorney's fees. *Id.* He is requesting relief of twenty million dollars. *Id.*

## D. *In Forma Pauperis*

A court may grant a plaintiff *in forma pauperis* status if the plaintiff submits an application disclosing all assets demonstrating that he cannot pay the costs. 28 U.S.C. § 1915(a)(1). Plaintiff has applied to proceed *in forma pauperis*. His application indicates that he qualifies financially. However, even if a court determines that a plaintiff can proceed *in forma pauperis* because of the plaintiff's financial status, the court may still dismiss the case if the underlying action is frivolous, fails to state a claim, or seeks monetary relief from a defendant who is immune. 28 U.S.C.A. § 1915 (e)(2). Under this statute, the court may dismiss a plaintiff's claim at any time if the above-mentioned conditions are met. *Id.*

"To avoid dismissal for failure to state a claim, a plaintiff's complaint must plead enough facts to state a claim to relief that is plausible on its face." *Pickett v. Texas*, 356 F. App'x 756, 757 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)) (internal quotation marks omitted); *see also Black v. Warren*, 134 F.3d 732, 733-34 (5th Cir. 1998) ("The language of § 1915(e)(2)(B)(ii) tracks the language of Federal Rule of Civil Procedure 12(b)(6)."). Courts therefore look to *Twombly* and *Iqbal* in order to evaluate whether a plaintiff's complaint should be dismissed for failure to state a claim under § 1915(e)(2)(B)(ii).

Under *Twombly*, a complaint must be plausible in order to survive a motion to dismiss for failure to state a claim.  *Twombly*, 550 U.S. at 544.  *Iqbal* used the principles of *Twombly* to create a two-part approach to evaluating a motion to dismiss for failure to state a claim. Under *Iqbal*, the court does not credit legal conclusions in the complaint.  *Iqbal*, 556 U.S. at 678–79 ("Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation") (internal quotation marks and citation omitted).  After eliminating any legal conclusions, the court then evaluates the remaining facts to determine whether they plausibly establish a right to relief.  *Id*. at 679.

### E. Failure to Comply with Order

Plaintiff failed to fully comply with the order issued on February 25, 2014.  Plaintiff does not tie specific facts to his various claims or show how specific facts demonstrate that a particular defendant violated his rights.  Therefore, it is unclear how or to what extent the defendants were personally involved in the alleged violation of his rights.

### F. Motion for Leave to File a Second Amended Complaint

Plaintiff filed a motion for leave to file a second amended complaint on June 9, 2014. After a party has amended a complaint once, "a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."  FED. R. CIV. P. 15(a)(2).  However, a court can consider factors such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, [and] futility of the amendment," in deciding

whether or not to grant a motion for leave to file another amended complaint.  *Priester v. JP Morgan Chase Bank, N.A.*, 708 F.3d 667, 678 (5th Cir.) *cert. denied*, 134 S. Ct. 196 (2013) (citation omitted).

Plaintiff has been given notice of the deficiencies in his complaint, including through the order issued on February 25, 2014, which laid out the specific issues with Plaintiff's complaint.  Plaintiff's first amended complaint did not fix these deficiencies.  Instead, it added new complications by adding new unnamed defendants.  Plaintiff also failed to comply with the order by failing to show that immunity defenses would not apply to defendants in their official or individual capacities.  Plaintiff also has included time-barred and frivolous claims in his complaint and will not be able to fix these deficiencies by amending his complaint. Therefore, Plaintiff's motion for leave to file a second amended complaint is DENIED.  *See Belk v. Compaq Computer Corp.,* 70 F. App'x 196 (5th Cir. 2003) (per curiam) (determining the district court had not abused its discretion in dismissing *pro se* plaintiff's claims for failure to state grounds on which relief could be granted after plaintiff failed to comply with two orders to amend his complaint).

### G. Constitutional Law Claims

### 1. Introduction: Section 1983

The purpose of Section 1983 is to provide a remedy for the violation of either federal statutes or of the Constitution itself by state actors.  *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990); 42 U.S.C.A. § 1983.  Claims under this section must allege sufficient facts to show that: "(1) the conduct in question [was] committed by a person acting under the color of

state law; and (2) the conduct [deprived] the plaintiff of a right secured by the Constitution or the laws of the United States." *Martin v. Thomas*, 973 F.2d 449, 452–53 (5th Cir. 1992).

Section 1983 further requires that a plaintiff "identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged." *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995). Vicarious liability may not be used to expand the reach of a § 1983 claim. *Thompkins v. Belt*, 828 F.2d 298, 303-04 (5th Cir. 1987). As such, a supervisor must have some causal connection to the alleged violation to be held liable under this statute. *Id.*

## 2. Non-state Actors: Federal Marshals Medina and Blockly

### A.  § 1983 Claims vs. *Bivens* claims

Plaintiff has asserted § 1983 claims against two Federal Marshals: Arresting Officer Medina and Arresting Officer Blockly. Doc. No. 23 at 18. However, Plaintiff cannot bring a § 1983 claim against federal actors. *West v. Atkins*, 487 U.S. 42, 49 (U.S. 1988) ("[T]he party charged with the deprivation must be a person who may fairly be said to be a state actor."). Plaintiff asserts that the two Defendants in question, Medina and Blockly, are Federal Marshals, not state actors. Doc. No. 23 at 18. Because Medina and Blockly do not meet the state actor requirement, all § 1983 claims asserted against them are DISMISSED WITH PREJUDICE as a matter of law.

Since Defendants Medina and Blockly are federal officers, Plaintiff's claims against them could be construed as *Bivens* claims. *Bivens* allows "a victim who has suffered a constitutional violation by a federal actor [to] recover damages in federal court." *McGuire v. Turnbo*, 137 F.3d 321, 323 (5th Cir. 1998) (citing *Bivens v. Six Unknown Named Agents of*

*Fed. Bureau of Narcotics*, 403 U.S. 388, 395–97 (1971)).  "*Bivens* is the federal counterpart of § 1983 [and] … extends the protections afforded by § 1983 to parties injured by federal actors not liable under § 1983."  *Abate v. S. Pac. Transp. Co*., 993 F.2d 107, 110 n.14 (5th Cir. 1993).

### B.  Illegal seizure and False Imprisonment claims

Plaintiff's complaint against Blockly and Medina for illegal seizure and false imprisonment can be construed as a claim under *Bivens*.  Plaintiff alleges that he was "rushed upon by four plain clothed officers" who arrested him.  He does not allege that these four officers included Medina and Blockly, though he later refers to them as "arresting officers." Assuming Medina and Blockly were involved in his arrest, Plaintiff fails to allege sufficient fact to establish a plausible Fourth Amendment or due process violation by these defendants. Plaintiff alleges that he was arrested pursuant to a warrant, and there are no allegations that Blockly and Medina were involved in procuring the warrant or had any knowledge upon which to question its validity.  Therefore, any potential *Bivens* claim against Defendants Medina and Blockly for a violation of Plaintiff's Fourth Amendment or due process rights is DISMISSED WITHOUT PREJUDICE for failure to state a claim.

### C. Personal Involvement

Plaintiff alleges no other facts involving Medina and Blockly apart from their alleged involvement in his arrest.  "Because vicarious liability is inapplicable to *Bivens* . . . suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Therefore, the other federal claims against Medina and Blockly, including conspiracy and

"refusing or neglecting to prevent," are dismissed for lack of personal involvement.  Plaintiff does not allege that any of the other defendants, such as Sheriff Ortiz, were supervisors of Medina or Blockly or were in any way responsible for their behavior under a theory of deliberate indifference or failure to train or supervise.  Accordingly, all federal claims against Medina and Blockly are DISMISSED and all claims against any other Defendant predicated on the conduct of Medina and Blockly are likewise DISMISSED.

### 3. Statute of Limitations

Courts have chosen to analogize actions under § 1983 to personal injury claims and have adopted the state-specific statute of limitations for such actions.  *Wilson v. Garcia*, 471 U.S. 261, 280 (1985); *see also Owens v. Okure*, 488 U.S. 235 (1989).  The personal injury statute found in § 16.003 of the Texas Civil Practices and Remedies Code creates a two-year statute of limitations for personal injury actions.  TEX. CIV. PRAC. & REM. CODE § 16.003. Plaintiff originally filed suit on June 26, 2013.  Therefore, any claims relying on conduct occurring before June 26, 2011 are time-barred.  This includes the failure to arrest Plaintiff's alleged assailant (and the alleged associated conspiracy), the failure to obtain crime-scene evidence, the events of May 28, 2011, in which Detective Jesus Ochoa allegedly "applies for and secures a no probable cause Arrest Warrant for the charge of Aggravated Kidnapping against Plaintiff" and an unknown Bexar County DA assists him, and the actions of the Crime Victims' Fund.

Plaintiff appears to argue that his conspiracy claims will allow him to include time-barred acts within "one package" with non-time-barred actions.  However, as discussed herein, Plaintiff fails to plead a conspiracy claim, and thus this theory for avoiding limitations fails.

Similarly, Plaintiff's continuing tort theory is inapplicable on these facts.  Plaintiff suffered a discrete injury on June 28, 2011, the date of his arrest, and was aware of that injury, such that the statute of limitations began to run no later than that date.  Yet he did not file suit until June 26, 2013.  The continuing tort doctrine does not allow him to base his claims or recover for conduct that occurred before June 26, 2011 in this context.  Any claims based on time-barred conduct or allegations are DISMISSED WITH PREJUDICE.

**4. Official Capacity Claims**

Plaintiff has sued Detective Jesus Ochoa, Sheriff Amadeo Ortiz, and the Bexar County Jail in their official capacities.  These claims are equivalent to claims against Bexar County. *See Will v. Mich. Dep't of State Police,* 491 U.S. 58, 70 (1989).  Under § 1983, such entities are considered "persons" and may therefore be sued if the entity's official policy is responsible for the deprivation of constitutional rights.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690, 98 S. Ct. 2018, 2035-36 (1978).  A plaintiff asserting claims under section 1983 against a county must show that the county's custom or policy was a moving force behind the constitutional violation.  *Id.*  A county is not subject to vicarious liability for the conduct of its officers.  *Id.*

Plaintiff has not shown that Bexar County had any policies or customs under which Defendants were acting that resulted in a violation of Plaintiff's constitutional rights. Although Plaintiff cites to instances of alleged corruption in the BCSO, the incidents are not sufficiently similar to establish a pattern or practice for purposes of § 1983 liability.  Plaintiff asserts that BCSO had a policy and custom of hiring and retaining unqualified and untrained personnel.  However, this allegation is conclusory and Plaintiff fails to show how such a

policy was the moving force of any constitutional violation in this case.   Plaintiff fails to establish that the acts complained of herein were the result of inadequate training.

The fact that Plaintiff has sued the former Sheriff, who is a final policymaker for the County, does not suffice to establish a claim against Bexar County without identifying a particular action or policy implemented by the Sheriff that led to the constitutional violation. As noted, Plaintiff fails to allege any personal involvement by former Sheriff Ortiz.

Plaintiff asserts that the Fifth Circuit has held that "the actions of an elected district attorney may be the actions of the county for § 1983 purposes," citing *Turner v. Upton County, Tex.*, 915 F.2d 133, 137 (5th Cir. 1990).   However, in *Turner*, the plaintiff alleged that she was framed by the sheriff and the district attorney themselves as part of a retaliatory conspiracy.   Plaintiff does not identify the "unknown Bexar County DA" as the district attorney for Bexar County, who might be characterized as a policymaker.   In addition, any action by this unknown DA occurred outside the period of limitations and therefore cannot be the basis for liability on the part of Bexar County.

The specifics of Plaintiff's claims against the Bexar County Jail are unclear.   Although Plaintiff complains of certain conditions and events at the jail, such as it being too cold and there being fights and his hearing about and witnessing aspects of a suicide, Plaintiff fails to establish that any of these conditions or events resulted in a deprivation of his constitutional rights.

The § 1983 claims against Defendants Ochoa, Ortiz, and the Bexar County Jail in their official capacities, being treated as claims against Bexar County, are therefore DISMISSED WITHOUT PREJUDICE.

**5. Individual Capacity Claims**

Qualified immunity applies to state and local government officials sued under § 1983 in their individual capacities. *See Malley v. Briggs*, 475 U.S. 335, 342 (1986). The purpose of qualified immunity is to protect government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

Plaintiffs have a high pleading burden when trying to overcome a qualified immunity defense. In fact, discovery may not proceed "until the district court *first* finds that the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity." *Wicks v. Miss. State Employment Servs.*, 41 F.3d 991, 994 (5th Cir. 1995). "This heightened pleading requirement . . . [necessitates that a plaintiff] allege the particular facts forming the basis of his claim, including those preventing [defendants] from successfully maintaining a qualified immunity defense. To overcome the immunity defense, the complaint must allege facts that, if proven, would demonstrate that [defendants] violated clearly established statutory or constitutional rights." *Id.* at 994–95.

**A. Claims against Sheriff Amadeo Ortiz in his Individual Capacity**

As noted, there is no respondeat superior liability under § 1983. A supervisor may be held liable if there exists either (1) his personal involvement in the constitutional deprivation; or (2) he implements a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation. *Cozzo v. Tangipahoa Parish Council*, 279 F.3d 273, 289 (5th Cir. 2002) (citing *Thompkins v. Belt*, 828

15

F.2d 298, 304 (5th Cir. 1987)).   Plaintiff does not allege that Sheriff Ortiz was personally involved in any of the events at issue.   Nor does Plaintiff allege that Ortiz affirmatively implemented a policy to hire and retain unqualified and untrained personnel or to arrest individuals without probable cause.

Even when a supervisor is not personally involved in a constitutional violation, a supervisor may be held liable for failure to train or supervise subordinates if: (1) the supervisor failed to train or supervise; (2) a causal link exists between the failure and violation of plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference. *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011).   Plaintiff fails to establish subjective or objective deliberate indifference on the part of Sheriff Ortiz or that a causal link exists between any failure to train and any alleged violation of Plaintiff's rights.   Plaintiff's citations to news articles and the like regarding alleged corruption, drug smuggling, and similar issues are not similar to the events in this case and do not establish that Ortiz was deliberately indifferent to the types of events of which Plaintiff complains.   Accordingly, all claims against Defendant Ortiz in his individual capacity are DISMISSED.

### B. Claims against Octavia Thompson in her Individual Capacity

Plaintiff sues Octavia Thompson for false imprisonment, illegal seizure, civil conspiracy to deprive Plaintiff of his constitutional rights, and refusing or neglecting to prevent.   These claims appear to stem from the denial of compensation from the Crime Victims' Fund.   To the extent these claims are barred by limitations, they have already been dismissed.   In addition, because Plaintiff complains only that Thompson failed to follow the Fund's policies, he fails to allege a violation of a federal law.   Section 1983 does not create a

cause of action for violation of state procedures.  Further, to the extent Plaintiff asserts that Thompson was somehow involved in his arrest or imprisonment, he fails to allege any facts that would support such a claim.  These claims are therefore DISMISSED.

### C. Claims against Detective Ochoa in his Individual Capacity

Plaintiff has failed to provide facts demonstrating that the qualified immunity defense would not be available to Det. Ochoa because Plaintiff has not alleged facts showing that he violated clearly established statutory or constitutional rights.  In order to prevail in a § 1983 claim for false arrest, a plaintiff must show that he was arrested without probable cause in violation of the Fourth Amendment. *Parm v. Shumate*, 513 F.3d 135, 142 (5th Cir. 2007). "Probable cause exists when the totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Ramirez v. Martinez*, 716 F.3d 369, 375 (5th Cir.2013) (emphasis omitted) (quoting *Flores v. City of Palacios*, 381 F.3d 391, 402 (5th Cir. 2004)).

Plaintiff claims that there was no probable cause for his arrest.  To the extent Plaintiff claims that Ochoa obtained a false warrant without probable cause, this occurred May 28, 2011, outside the limitations period.  In addition, his allegations are insufficient to establish such a claim or to overcome Ochoa's qualified immunity.  Plaintiff alleges that his assailant claimed that Plaintiff groped him and that the police report stated that Plaintiff groped him and that his assailant had cuts on his fingers from a knife Plaintiff used on him.  Plaintiff further alleges that Ochoa told him that the assailant filed a complaint against him.  Thus, Plaintiff's own pleadings demonstrate that Ochoa could have objectively concluded that there was

probable cause for the arrest.  A reasonably competent officer who objectively concludes that an arrest warrant should issue is entitled to qualified immunity, even if officers of reasonable competence could disagree on this issue.  *Bledsoe v. Marshall City Police Dept.*, No. 2:08cv241, 2011 WL 1883847, at *7 (E.D. Tex. March 4, 2011).  Whether the crime actually occurred is irrelevant to the probable cause analysis.  *Id.*

In addition, where an arrest is made under authority of a properly issued warrant, the arrest is simply not a false arrest unless there were intentional misrepresentations or material omissions in the warrant application.  *Smith v. Gonzales*, 670 F.2d 522, 526 (5th Cir. 1982); *see also Freeman v. County of Bexar*, 210 F.3d 550, 553 (5th Cir. 2000) (a plaintiff must prove that the defendant knowingly or recklessly provided false information to secure the arrest warrant).  Plaintiff points to no intentional misrepresentations or material omissions in the warrant application.  He alleges only in a conclusory manner that "the warrant is prepared, sworn to, and signed under 15-20 conditions (depending) which would have eviscerated a standard arrest warrant application,"  Am. Compl. ¶ 116, and that an "unknown Bexar County DA helped (or instructed) Detective Jesus Ochoa to prepare a warrant for his arrest that was 'on its face' lacking probable cause," *id.* ¶ 154.

Plaintiff complains that the BCSO and Ochoa failed to adequately investigate and failed to believe his exculpatory evidence.  However, an officer is not required to believe protestations of innocence or perform an error-free investigation.  *Sanders v. English*, 950 F.2d 1152, 1161 (5th Cir. 1992). The fact that Ochoa did not believe Plaintiff or refused to have a CSI unit examine his car does not establish a constitutional violation sufficient to overcome a qualified immunity defense.

Plaintiff's illegal seizure and false imprisonment claims are DISMISSED WITHOUT PREJUDICE for failure to state a claim for relief.

**6. Civil conspiracy to deprive Plaintiff of his Constitutional Rights**

Plaintiff claims that Defendants conspired to deprive him of his constitutional rights under 42 U.S.C. § 1983 and 42 U.S.C. § 1985.  Plaintiff fails to identify which section of § 1985 is applicable to his case.  Plaintiff's claim fails under both §§ 1985(2) and 1985(3) because he has not alleged that he was the victim of any race or class-based discrimination protected under this statute.  Plaintiff also claims that whistleblowers are a protected class under § 1985.  Doc. No. 23 at 23.   However, the Fifth Circuit has rejected finding that whistleblowers are a protected class under § 1985 because "language requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or . . . class-based, invidiously discriminatory animus behind the conspirator's action." *Bryant v. Military Dept. of Miss.*, 597 F.3d 678, 687 (5th Cir. 2010) ("This Circuit has held that the class-based animus requirement of § 1985(3) applies equally to causes of action under the second clause of § 1985(2) . . . we have previously rejected the argument that 'whistleblowers' are a protected class for purposes of § 1985 claims").  Therefore, any claims that Plaintiff has alleged under § 1985(2) or § 1985(3) are DISMISSED WITHOUT PREJUDICE for failure to state a claim for relief.

Although a claim under § 1985(1) does not require a plaintiff to allege racial or class based discriminatory animus, *Bryant*, 597 F.3d at 688, this section is irrelevant to the case at bar.  Section 1985(1) prevents conspiracies which would interfere with the performance of a federal official's duties. *Benningfield v. City of Houston*, 157 F.3d 369, 378 (5th Cir. 1998).

Since the Plaintiff is not a federal official, this section does not provide him a basis for relief. *See id.* ("The Plaintiffs are not federal officials and, therefore, their allegations fail to state a claim under § 1985(1)").   Therefore, any claims Plaintiff has alleged under § 1985(1) are DISMISSED WITHOUT PREJUDICE.

Plaintiff also alleges a civil conspiracy under § 1983.   In order to allege a civil conspiracy under § 1983, Plaintiff must establish "(1) the existence of a conspiracy involving state action and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy." *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990).  To avoid dismissal, a plaintiff must show "an actual violation of section 1983." *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995).   A plaintiff cannot establish that a conspiracy occurred by merely alleging it happened through conclusory allegations with no factual support. *Hicks v. Bexar Cnty., Tex.*, 973 F. Supp. 653, 676 (W.D. Tex. 1997) aff'd sub nom. *Hicks v. Bexar Cnty.*, 137 F.3d 1352 (5th Cir. 1998) ("Conclusory allegations of conspiracy in a Section 1983 lawsuit are insufficient, absent reference to material facts, to state a substantial claim of federal conspiracy or withstand scrutiny under either Title 28 U.S.C. Section 1915(e) . . ."). Allegations of conspiracy without facts demonstrating prior agreement between defendants cannot survive a motion to dismiss. *See Hey v. Irving*, 161 F.3d 7 (5th Cir. 1998) (holding that "plaintiffs' bare conclusory allegation that '[a]ll three defendants demonstrated a meeting of the mind' absent any specific facts showing that the defendants reached an agreement to violate their rights, is not sufficient to plead a § 1983 conspiracy.").

Plaintiff alleges that Defendants "conspired to deprive plaintiff of his due process rights and equal protections of the laws." Doc. No. 23 at 22.  Plaintiff's allegations throughout

his first amended complaint are conclusory and fail to assert facts establishing that Defendants had an agreement to violate his constitutional rights.  *See* Doc. No. 23.  In addition, Plaintiff's conspiracy claims fail because he has not established a violation of his rights.

Further, to the extent Plaintiff may be alleging a "criminal conspiracy" "to violate the standard for mandatory felony arrests in cases where the totality of the circumstances indicated that a felony had been committed," Plaintiff lacks standing to enforce the criminal laws and therefore his claims premised on a conspiracy to violate Texas Penal Code § 38.05 fail.  As such, Plaintiff's conspiracy claims against all Defendants are DISMISSED WITHOUT PREJUDICE.

### 7. 42 U.S.C. § 1983 Refusing or Neglecting to Prevent

Plaintiff's final federal claim is Refusing or Neglecting to Prevent under § 1983.  An "action for neglect to prevent" actually falls under 42 U.S.C. § 1986, not § 1983.  However, liability under § 1986 is predicated on § 1985.  42 U.S.C. § 1986 ("Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title . . . shall be liable"); *see also Newberry v. E. Texas State Univ*., 161 F.3d 276, 281 (5th Cir. 1998); *Bryan v. City of Madison, Miss*., 213 F.3d 267, 276 (5th Cir. 2000) ("And because a valid § 1985 claim is a prerequisite to a § 1986 claim, that claim is also invalid."). Therefore, if Plaintiff is truly alleging neglect to prevent under § 1986, his claim is invalid because the § 1985 claim fails.

If he is not asserting a § 1986 action, his allegations seem to be reasserting his previous § 1983 claims.  *See* Doc. No. 23 at 23–24.  To the extent Plaintiff may be arguing

that any of the Defendants were in a position to prevent a constitutional violation but failed to do so, Plaintiff has failed to plead sufficient facts to establish such a claim.

In either situation, the Plaintiff has failed to allege sufficient facts to support his claims and the claim is accordingly DISMISSED WITHOUT PREJUDICE for failure to state a claim for relief.

## H. State Law Claims

Plaintiff's state law claims will also be dismissed under § 1915(e)(2)(B) because Plaintiff has failed to state a claim on these respective causes of action.  Plaintiff asserts the following causes of action: abuse of process against Ochoa, Ortiz, the Bexar County Jail, Medina, Blockly, and Thompson; negligence against Ochoa, Ortiz, Medina, Blockly, and Thompson; defamation against Ochoa and Ortiz; intentional infliction of emotional distress against Ochoa, Ortiz, the Bexar County Jail, Medina, Blockly, and Thompson; and negligent misrepresentation against Medina, Blockly, and Thompson.

### 1. Magistrate Judge's Recommendation

The Magistrate Judge recommends dismissing Plaintiff's state law claims under § 1367(c) because all of Plaintiff's federal law claims have been dismissed by the Court.  To the extent that this Court lacks original jurisdiction over the state law claims, the Court declines to exercise supplemental jurisdiction over the state law claims.  However, this Court appears to have diversity jurisdiction over the state law claims under § 1332. Therefore, Plaintiff's claims will instead be dismissed under § 1915(e)(2)(B) for failure to state a claim.

## 2. Overarching Issues

### A.  No application of the law to the facts of his case

Plaintiff has not shown how the law applies to the facts in regard to his state law claims.  Plaintiff provides the elements of each cause of action, but fails to allege facts sufficient to show how he meets each element.  Per *Twombly* and *Iqbal*, stating legal conclusions alone is insufficient to state a claim for relief.  As such, Plaintiff's state law claims that fail to allege facts in support of each element of the violation in question are DISMISSED WITHOUT PREJUDICE.

### B.  Statute of Limitations

The statute of limitations for Plaintiff's state law claims is two years.  *See* TEX. CIV. PRAC. & REM. CODE § 16.003(a).  Under Texas law, "[T]he statute of limitations begins to run when a particular cause of action accrues . . . a cause of action accrues when a wrongful act causes an injury, regardless of when the plaintiff learns of the injury."  *Mitchell Energy Corp. v. Bartlett*, 958 S.W.2d 430, 436 (Tex. App.—Fort Worth 1997).  Plaintiff filed his suit on June 26, 2013.  Much of the basis of Plaintiff's complaint consists of injuries occurring more than two years before this date.  Any conduct occurring before June 26, 2011 is therefore time-barred under § 16.003 with regard to Plaintiff's state claims, and the continuing tort doctrine does not apply.  This includes any actions by Ochoa in allegedly obtaining a warrant without probable cause.  Plaintiff's state law claims based on time-barred conduct or allegations are DISMISSED WITH PREJUDICE.

### C. Governmental Immunity

To the extent Plaintiff is bringing state-law tort claims against the Bexar County Jail and Ochoa and Ortiz in their official capacities (which claims are treated as claims against Bexar County), Bexar County has governmental immunity.  Immunity has not been waived for intentional torts. TEX. CIV. PRAC. & REM. CODE § 101.057.  Plaintiff's abuse of process, defamation, and intentional infliction of emotional distress claims against Bexar County are intentional tort claims for which governmental immunity has not been waived.  With regard to the negligence and negligent misrepresentation claims, immunity is waived only in cases involving property damage, personal injury, and death proximately caused by (1) the operation or use of a motor-driven vehicle or motor-driven equipment; (2) a condition or use of tangible or real property; and (3) premises defects. TEX. CIV. PRAC. & REM.CODE §§ 101.021, 101.022. Because Plaintiff has not established a waiver of sovereign immunity, his state-law tort claims against the Bexar County Jail, Ochoa, and Ortiz in their official capacities are DISMISSED for lack of jurisdiction.

### D. Ortiz

Similar to Plaintiff's federal law claims, Plaintiff has failed to allege facts demonstrating Sheriff Ortiz's involvement in the alleged violations.  "Causation in fact—*i.e.,* proof that the defendant's conduct did in fact cause the plaintiff's injury—is a standard requirement of any tort claim." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2524 (2013).  For instance, Plaintiff only presents allegations of general problems at the Sheriff's office, but provides no evidence that Sheriff Ortiz was in any way involved in his case.  As Plaintiff has failed to allege causation in regard to Ortiz, Plaintiff's state law claims of abuse

of process, negligence, defamation, and intentional infliction of emotional distress against Ortiz are DISMISSED WITHOUT PREJUDICE.

**3. Abuse of Process**

Under Texas law, there are three elements for an abuse of process claim: "(1) that the defendant made an illegal, improper or perverted use of the process, a use neither warranted nor authorized by the process; (2) that the defendant had an ulterior motive or purpose in exercising such illegal, perverted or improper use of the process; and (3) that damage resulted to the plaintiff as a result of such illegal act." *Brown v. Nationsbank Corp.*, 188 F.3d 579, 587 (5th Cir. 1999). Plaintiff has brought this claim against Ochoa, Ortiz, Medina, Blockly, and Thompson.

No facts are alleged within the limitations period to support this claim. Plaintiff alleges that Ochoa obtained a "no probable cause warrant" on May 28, 2011, outside the limitations period. Moreover, Plaintiff fails to allege that any defendant misused process for a collateral purpose or used the process to compel a party to do a collateral thing that he would not otherwise be compelled to do. *Davis v. West*, 433 S.W.3d 101, 111 (Tex. App.–Houston [1st Dist.] 2014, *pet. filed*) ("there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions"). Plaintiff fails to allege any facts with regard to Ochoa or the other Defendants that would support such a claim. Plaintiff's abuse of process claims against all Defendants are DISMISSED WITHOUT PREJUDICE.

**4. Negligence**

To successfully plead a negligence claim in Texas, a plaintiff must allege facts in support of the following three elements: (1) "[the existence of] a legal duty owed by one person to another," (2) "a breach of that duty," and (3) "damages proximately caused by the breach." *D. Houston, Inc. v. Love,* 92 S.W.3d 450, 454 (Tex. 2002) (citing *El Chico Corp. v. Poole,* 732 S.W.2d 306, 313 (Tex. 1987)). Plaintiff asserts a negligence claim against Ochoa, Ortiz, Medina, Blockly, and Thompson. Plaintiff fails to establish that any of these Defendants owed Plaintiff a duty or breached that duty. Consequently, Plaintiff's negligence claims against Ochoa, Ortiz, Medina, Blockly, and Thompson are DISMISSED WITHOUT PREJUDICE.

**5. Negligent Misrepresentation**

Plaintiff has brought a negligent misrepresentation claim against Medina, Blockly, and Thompson. The elements of negligent misrepresentation are as follows:

> (1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies false information for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation.

*Fed. Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991).

Plaintiff has not provided any facts that Thompson, Medina, or Blockly made any type of misrepresentation to him, nor does he allege that they supplied him any false information in the course of their business, or that he suffered pecuniary loss by justifiably relying on the representation. To the extent Plaintiff claims that he was somehow tricked into meeting with someone at the Fund when he was arrested, any misrepresentation would not be sufficient to

create liability for negligent misrepresentation and would be outside the limitations period. Therefore Plaintiff's claims of negligent misrepresentation are DISMISSED WITHOUT PREJUDICE.

### 6. Defamation

To prove a cause of action for defamation, a plaintiff must generally prove that: (1) the defendant published a statement of fact, (2) the statement was defamatory; (3) the statement was false, (4) the defendant acted negligently in publishing the false and defamatory statement; and (5) the plaintiff suffered damages as a result. *Stephens ex rel. R.A. v. Wallace*, No. 14-40044, __ F. App'x __, 2014 WL 3413728 (5th Cir. July 15, 2014)(quoting *Brown v. Swett & Crawford of Tex.*, 178 S.W.3d 373, 382 (Tex. App.–Houston [1st Dist.] 2005, no pet.)).

Plaintiff has not alleged facts showing that any Defendant other than Ochoa made a potentially defamatory statement about him.   Although Plaintiff asserts facts regarding statements made by Detective Ochoa about Plaintiff to the Crime Victims' Fund, these statements were made outside the limitations period. The only facts that are not time-barred regarding Plaintiff's defamation claim allege that Detective Ochoa made statements to Plaintiff's landlady.  Plaintiff alleges: (1) that his former landlady was put in touch with Det. Ochoa and he "tells her that plaintiff: 'was out kidnapping' and that 'they' will be by the next day to go through his belongings"; (2) Detective Ochoa then calls her the next day to say that 'they' won't be over. He tells her: "We have so much evidence against him that he will be in Prison for years. It would be best to just throw his belongings into the street."; (3) The brother of the landlady (Carlos) said to her "Nothing here makes sense." His sister "Yes, Danny is so

quiet, Danny walks the neighbor's dog." They decide to keep plaintiffs property in the house until they hear from plaintiff's family.; and (4) Plaintiff later picks up the property.   Am. Compl. ¶ 127-129.

The Texas Supreme Court recently explained the difference between defamation *per se* and defamation *per quod* in *Hancock v. Variyam*, 400 S.W.3d 59, 63-64 (Tex. 2013):

> Defamation is generally defined as the invasion of a person's interest in her reputation and good name. Defamation is delineated into defamation *per se* and *per quod*. Historically, defamation *per se* has involved statements that are so obviously hurtful to a plaintiff's reputation that the jury may presume general damages, including for loss of reputation and mental anguish. A statement that injures a person in her office, profession, or occupation is typically classified as defamatory *per se*. Defamation *per quod* is defamation that is not actionable *per se.*

Plaintiff has not established that the alleged defamatory statement resulted in any damages. Assuming that Ochoa's statement is defamation *per* se such that damages could be presumed, Plaintiff must still prove fault.  Even in a defamation *per se* claim between private parties over a matter of private concern, "there must still be a showing of fault." *Farias v. Garza*, 426 S.W.3d 808, 816 (Tex. App.–San Antonio 2014, pet. filed) (citing *Hancock*, 400 S.W.3d at 65 n.7; *WFAA–TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998) (holding fault "is a constitutional prerequisite for defamation liability"). If the plaintiff is a private figure, the plaintiff must show the defendant knew or should have known the defamatory statement was false.  *Id.*   As discussed above, Plaintiff's pleadings indicate that Det. Ochoa had probable cause to conclude that Plaintiff committed the crime at issue.   Under the circumstances, Plaintiff fails to plead that Det. Ochoa knew or should have known that the statements were false.

In addition, "[i]n Texas, a governmental employee is entitled to official immunity: (1) for the performance of discretionary duties; (2) within the scope of the employee's authority; (3) provided the employee acts in good faith." *Stephens*, __ F. App'x at __ (quoting *McIntosh v. Partridge*, 540 F.3d 315, 326 (5th Cir. 2008)).  In this case, Det. Ochoa made a statement to Plaintiff's landlady in his role as a detective, informing her that "they" (presumably officers) would be by to go through his belongings. He then informed her the next day, in his role as a detective, that they would not be by.  Det. Ochoa is entitled to official immunity because Plaintiff has failed to plead sufficient facts to establish bad faith.  "[A]n officer acts in bad faith only if he could not have reasonably reached the decision in question." *Stephens*, __ F. App'x at __ (quoting *University of Houston v. Clark*, 38 S.W.3d 578, 581 (Tex. 2000)). Plaintiff's pleadings establish that Det. Ochoa had probable cause to believe that Plaintiff was guilty of the crime charged, such that Plaintiff fails to establish bad faith, and Ochoa's statements to Plaintiff's landlady in the course and scope of his employment are protected by official immunity.

Accordingly, the defamation claim against Detective Ochoa is DISMISSED WITHOUT PREJUDICE.

**7. Intentional Infliction of Emotional Distress**

Plaintiff brings a claim of intentional infliction of emotional distress against all named defendants.  Under Texas law, to state a claim for intentional infliction of emotional distress, a Plaintiff must allege that, "1) the defendant acted intentionally or recklessly, 2) the conduct was 'extreme and outrageous,' 3) the actions of the defendant caused the plaintiff emotional distress, and 4) the resulting emotional distress was severe." *Standard Fruit & Vegetable Co.,*

*Inc. v. Johnson*, 985 S.W.2d 62, 65 (Tex. 1998).  The tort of intentional infliction of emotional

distress is a "gap-filler" tort that was created for the "limited purpose of allowing recovery in

those rare instances in which a defendant intentionally inflicts severe emotional distress in a

manner so unusual that the victim has no other recognized theory of redress." *Hoffmann–La*

*Roche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004).

Plaintiff has failed to provide facts in his first amended complaint that demonstrate a

cause of action for intentional infliction of emotional distress.  Plaintiff fails to plead any

conduct by Defendants Ortiz, Medina, Blockly, or Thompson that could be considered

extreme and outrageous.  With regard to Ochoa, much of the alleged conduct is time-barred.

Further, because Plaintiff fails to establish that Ochoa lacked probable cause, he fails to allege

any extreme or outrageous conduct that resulted in severe emotional distress with regard to his

arrest.  With regard to the other alleged conduct, such as the phone calls and yelling, the Court

finds that it is not extreme and outrageous as a matter of law.  Furthermore, Plaintiff does not

allege that any emotional distress he allegedly suffered was severe.  Plaintiff's intentional

infliction of emotional distress claims against all Defendants are accordingly DISMISSED

WITHOUT PREJUDICE.

**Conclusion**

As noted, Plaintiff fails to tie specific facts and allegations to his claims against

specific individuals, making it difficult to discern the precise nature of some of his claims.

Plaintiff has already been given prior opportunities to adequately plead his claims, such that no

further opportunity is warranted and Plaintiff's motion for leave to file a Second Amended

Complaint (docket no. 31) is DENIED.

Plaintiff's motion for leave to proceed *in forma pauperis* on all federal and state law claims (docket no. 24) is DENIED.  All other pending motions, including docket nos. 15, 25, & 26, are DISMISSED as moot.  The claims against the six named Defendants are DISMISSED as set forth in this Order.  The claims against the 164 un-named defendants are DISMISSED WITHOUT PREJUDICE for failure to state a claim.

SIGNED this 21st day of August, 2014.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE